UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SABA CAPITAL MASTER FUND, LTD., and
SABA CAPITAL MANAGEMENT, L.P.,

        Plaintiffs,

    -v-

CLEARBRIDGE ENERGY MIDSTREAM
OPPORTUNITY FUND INC., CLEARBRIDGE
MLP AND MIDSTREAM FUND INC.,
CLEARBRIDGE MLP AND MIDSTREAM TOTAL
RETURN FUND INC., WESTERN ASSET
INTERMEDIATE MUNI FUND INC.,
MUNICIPAL INCOME FUND, INC.,
BLACKROCK ESG CAPITAL ALLOCATION
TRUST, BLACKROCK INNOVATION AND
GROWTH TERM TRUST, ROYCE GLOBAL VALUE
TRUST, INC., TORTOISE MIDSTREAM
ENERGY FUND, INC., TORTOISE ENERGY
INDEPENDENCE FUND, INC., TORTOISE
PIPELINE & ENERGY FUND, INC.,
TORTOISE ENERGY INFRASTRUCTURE
CORP., ECOFIN SUSTAINABLE AND SOCIAL
IMPACT TERM FUND, ADAMS DIVERSIFIED
EQUITY FUND, INC., ADAMS NATURAL
RESOURCES FUND, FS CREDIT
OPPORTUNITIES CORP., and R. GLENN
HUBBARD, W. CARL KESTER, CYNTHIA L.
EGAN, FRANK J. FABOZZI, LORENZO A.
FLORES, STAYCE D. HARRIS, J. PHILLIP
HOLLOMAN, CATHERINE A. LYNCH, ROBERT
FAIRBAIRN, JOHN M. PERLOWSKI, in
their capacity as Trustees of the
BlackRock ESG Capital Allocation
Trust and BlackRock Innovation and
Growth Term Trust, and P. BRADLEY
ADAMS, in his capacity as Trustee of
the Ecofin Sustainable and Social
Impact Term Fund,

        Defendants.

---

23-cv-5568 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

Plaintiff Saba Capital Master Fund, Ltd. and its investment manager Saba Capital Management, L.P. (collectively, "Saba") filed this suit against 16 funds organized under Maryland law -- 13 of which are corporations and 3 of which are trusts -- and 11 individual trustees, alleging that the 16 funds each adopted a resolution that violates the "one share, one vote" mandate of the Investment Company Act of 1940. See ECF No. 1 ("Complaint"). On August 15, 2023, defendants moved to dismiss the complaint because of forum selection clauses in the bylaws of 14 of the funds, which defendants argue require this suit to be brought in state or federal court in Maryland. See ECF No. 58 ("Motion"), at 1-2.[1]

Saba responds on two fronts. First, Saba argues that Maryland law does not permit corporations to adopt a forum selection bylaw for claims arising under the federal securities laws, such as the Investment Company Act. See ECF No. 65 ("Opp."), at 4-6. In the alternative, Saba argues that only five of the funds' forum selection clauses facially apply to its claim and that even those should not be enforced. Id. at 6-25.

After considering the parties' submissions and hearing oral argument, the Court grants defendants' motion in part and denies it in part. Although the Court rejects Saba's first argument, the

---

[1] Saba filed a motion for summary judgment the same day it filed the complaint. See ECF No. 22. Proceedings on that and other potential motions have been stayed pending the resolution of the instant motion to dismiss. See Minute Entry of 8/7/2023.

Court agrees with Saba that only five defendant funds' bylaws have forum selection clauses that encompass Saba's claim. As explained below, the Court grants defendants' motion to dismiss Saba's claims against those five funds. And because ten of the individual defendants have been sued in their capacity as trustees of one of those five funds, the Court also dismisses the claims regarding that fund against those individuals. The Court denies defendants' motion to dismiss the claims against the remaining defendants.

I.  <u>Legal Standard</u>

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of <u>forum non conveniens</u>." <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.</u>, 571 U.S. 49, 60 (2013).[2] The typical <u>forum non conveniens</u> analysis involves "evaluat[ing] both the convenience of the parties and various public-interest considerations," such as "the administrative difficulties flowing

---

[2] Defendants moved to dismiss under both the doctrine of <u>forum non conveniens</u> and Federal Rule of Civil Procedure 12(b)(3), the latter of which allows dismissal for "improper venue." However, because defendants argue only that the forum selection clauses require a forum of Maryland -- not that venue is improper under the relevant statute, 28 U.S.C. § 1391 -- Rule 12(b)(3) does not apply. <u>See Atl. Marine</u>, 571 U.S. at 57 ("[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause."). Similarly, because defendants are seeking dismissal rather than transfer to a different federal venue, the federal transfer statute, 28 U.S.C. § 1404, does not apply.

from court congestion" and "the local interest in having localized controversies decided at home." Id. at 62 & n.6.[3] "The Court must also give some weight to the plaintiffs' choice of forum." Id. at 62 n.6.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause." Id. at 63. In that circumstance, courts apply a modified version of the forum non conveniens doctrine, which gives the "forum-selection clause . . . controlling weight in all but the most exceptional cases." Id.

In particular, the forum non conveniens analysis changes in two ways. "First, the plaintiff's choice of forum merits no weight." Id. "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. "Second, a court . . . should not consider arguments about the parties' private interests." Id. at 64. "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. And because public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id. "Although it is conceivable in a

---

[3] Alterations and internal quotation marks are omitted throughout, unless otherwise indicated.

particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, such cases will not be common." Id.[4]

The Second Circuit has provided a four-part framework for analyzing the enforceability of a forum-selection clause. See Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014). In conducting that analysis, the Court must "ask: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." Id. (ellipses in original). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. "A party can overcome this

---

[4] Although not relevant here, Atlantic Marine also identified a third way the forum non conveniens analysis changes when a valid forum selection clause applies. See 571 U.S. at 64–65. In a typical case in which a court dismisses an action under forum non conveniens or transfers it to another federal venue under 28 U.S.C. § 1404, the transferee court applies the choice-of-law rules of the original forum state. Id. But when there is a valid forum selection clause in place, the chosen forum applies its own choice-of-law rules, "a factor that in some circumstances may affect [the] public-interest considerations" of dismissal or transfer. Id. at 64. Here, however, this factor does not feature because the claim is governed by federal law.

presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id.

II.  Discussion

A. Maryland Law Allows Forum Selection Bylaws for Saba's Claim

The Court begins with Saba's threshold argument that Maryland's corporate code prohibits forum selection bylaws for claims under the federal securities laws, such as the Investment Company Act of 1940. If that argument is correct, the funds' forum selection bylaws would be unenforceable. And because defendants make no alternative argument that the forum non conveniens doctrine warrants dismissal even if none of those clauses are enforceable, the proper course would be to deny defendants' motion in its entirety.

Although Saba's position is an arguable one, the Court rejects it. The parties identify two provisions in Maryland's corporate code, one of which applies to corporations and the other of which applies to trusts, that speak expressly to forum selection clauses. The statute governing corporations provides: "[T]he charter or bylaws of a corporation may require, consistent with applicable jurisdictional requirements, that any internal corporate claim be brought only in courts sitting in one or more specified jurisdictions." Md. Code, Corps. & Ass'ns § 2-113(b)(1) (emphasis added). The relevant statute for trusts is far broader. It provides

that "[i]n the governing instrument of a statutory trust or other writing, a trustee, beneficial owner, or other person may consent to be . . . subject to . . . [t]he exclusive jurisdiction of the courts of the State." Id. § 12-501(b)(1)(ii).

Saba is right that the relevant statute governing corporations speaks only of forum selection bylaws for "internal corporate claim[s]," id. § 2-113(b)(1), which a claim under the Investment Company Act is not. As Maryland law provides,

> "Internal corporate claim" means a claim, including a claim brought by or in the right of a corporation:
>
> (1)  Based on an alleged breach by a director, an officer, or a stockholder of a duty owed to the corporation or the stockholders of the corporation or a standard of conduct applicable to directors;
>
> (2)  Arising under this article; or
>
> (3)  Arising under the charter or bylaws of the corporation.

Id. § 1-101(q). Saba's claim arises under a federal right contained in the Investment Company Act, not under any alleged breach of fiduciary duty, state law, or any of the funds' governing documents themselves. As Saba explains, "[t]he purpose of this action is to invalidate unlawful bylaws, not to vindicate some right arising under them." Opp. at 10.

Defendants nevertheless argue that Saba's claim arises under the funds' bylaws because it is "premised upon and reli[es] fundamentally on the terms of the bylaws." Motion at 11. That

overly broad assertion misapprehends the term "arising under." The Second Circuit has explained "that statutory claims do not 'arise out of' a contract" -- or in this case, a bylaw -- "containing a forum selection clause unless the rights or duties being sued upon originate from the contract" (or bylaw). CleanSpark, Inc. v. Discover Growth Fund, LLC, 485 F. Supp. 2d 494, 502 (S.D.N.Y. 2020) (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 390-91 (2d Cir. 2007)). A contrary interpretation would swallow the "distinction between narrow forum selection clauses, which only cover claims 'arising out of' the contract, and broad clauses, which also cover claims 'related to' or 'in connection with' the contract." Id. (quoting Phillips, 494 F.3d at 389); see Prod. Res. Grp., L.L.C. v. Martin Pro., A/S, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (explaining the distinction). The plain text of § 2-113 thus does not itself provide authority for forum selection bylaws governing claims under the Investment Company Act.

But, as defendants point out, a different Maryland statute allows corporate bylaws to "contain any provisions not inconsistent with law or the charter of the corporation for the regulation and management of the affairs of the corporation." Md. Code, Corps. & Ass'ns § 2-110(a). Although the parties have not identified, and the Court has not found, relevant Maryland case law discussing the interaction of § 2-113 and § 2-110, the Supreme Court of Delaware recently addressed the interplay of two similar

provisions in Delaware's corporate code. See Salzberg v. Sciabacucchi, 227 A.3d 102 (Del. 2020). Similarly to § 2-113, Delaware's corporate code provides that corporate "bylaws may require . . . that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State." Del. Code Ann. tit. 8, § 115. And much like § 2-110 of the Maryland code, Delaware's corporate code provides that a corporation's governing documents may contain "[a]ny provision for the management of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors, and the stockholders . . . if such provisions are not contrary to the laws of this State." Id. § 102(b)(1).

In Salzberg, the Supreme Court of Delaware held that the statute permitting any "provisions . . . not contrary to the laws of this State" allows corporate bylaws to include forum selection clauses even for federal claims, notwithstanding that the more specific statute regarding forum selection clauses mentions only "internal corporate claims." 227 A.3d at 120-38. In particular, the Court rejected the very argument Saba makes here -- that because the statute speaking to forum selection clauses specifically mentions "internal corporate claims," permissible corporate forum selection bylaws are limited to that category of claims. Id. at 118-19. The Court held that the forum selection

statute "simply clarifies that <u>for certain claims</u>, Delaware courts may be the only forum, but they cannot be excluded as a forum." <u>Id.</u> at 118. By contrast, the Court explained, "Section 102(b)(1)'s general and broad provisions govern all other claims." <u>Id.</u> at 118-19.

The Supreme Court of Delaware's reading also accords with the text and structure of § 2-113(b) of Maryland's corporate code. In full, § 2-113(b)(1) provides:

> Except as provided in paragraph (2) of this subsection, the charter or bylaws of a corporation may require, consistent with applicable jurisdictional requirements, that any internal corporate claim be brought only in courts sitting in one or more specified jurisdictions.

In turn, paragraph (2) states, in relevant part:

> (ii) The charter or bylaws of a corporation may not prohibit bringing an internal corporate claim in the courts of this State or a federal court sitting in this State.

Much like the Delaware statute in <u>Salzberg</u>, a contextual reading of § 2-113(b) shows that it "simply clarifies that for certain claims, [Maryland] courts may be the only forum, but they cannot be excluded as a forum." <u>Salzberg</u>, 227 A.3d at 118 (emphasis omitted).

Moreover, Saba itself acknowledges that "Maryland's law follows the model, set by the Delaware legislature and replicated in other states, of codifying a corporation's ability to require (via a forum selection clause) an internal corporate claim to be decided in the state of incorporation." Opp. at 6 n.4. Saba even

cites Salzberg to elucidate the meaning of § 2-113 and states that "the Maryland legislature enacted [a] virtually identical provision" to Delaware's. Id. Given Salzberg's holding, then, Saba has not shown that Maryland law prohibits forum selection bylaws for claims under the Investment Company Act.[5]

Finally, Saba rests its entire argument on this point on § 2-113, but that statute covers only corporations. Three of the 16 defendant funds are statutory trusts, not corporations.[6] Saba does not even address, let alone reconcile, the sweepingly inclusive language of Maryland's law allowing statutory trusts to adopt forum selection bylaws. As noted above, that law provides:

> In the governing instrument of a statutory trust or other writing, a trustee, beneficial owner, or other person may consent to be . . . [s]ubject to . . . [t]he exclusive jurisdiction of the courts of the State.

---

[5] A better argument for Saba might be that permitting forum selection bylaws for federal claims renders superfluous the words "internal corporate" in § 2-113. See Gillespie v. State, 804 A.2d 426, 427 (Md. 2002) (explaining that courts "interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant"). But even then, the superfluity concern dissipates when one considers both subparagraphs (1) and (2) of § 2-113(b). The reason that subparagraph (1) only addresses internal corporate claims is because only that category of claims comes under subparagraph (2)'s restriction that Maryland may not be excluded as a forum.

[6] Those three funds are: Ecofin Sustainable and Social Impact Term Fund, BlackRock ESG Capital Allocation Trust, and BlackRock Innovation and Growth Term Trust. See Complaint ¶¶ 20-22.

Md. Code, Corps. & Ass'ns § 12-501(b)(1)(ii).[7] Saba's argument under § 2-113, even if it were correct, would not apply to the three defendants that are statutory trusts.

B. <u>Five of the Defendant Funds Have Applicable Forum Selection Bylaws</u>

1. <u>The ClearBridge and Western Asset Funds' forum selection bylaws apply to Saba's claim.</u>

The four ClearBridge and Western Asset Fund defendants -- ClearBridge Energy Midstream Opportunity Fund Inc. ("EMO"), ClearBridge MLP and Midstream Total Return Fund Inc. ("CTR"); ClearBridge MLP and Midstream Fund Inc. ("CEM"); and Western Asset Intermediate Muni Fund Inc. ("SBI") -- have forum-selection bylaws that state:

> Unless the Corporation consents in writing to the selection of an alternative forum, <u>the Circuit Court for Baltimore City, Maryland</u>, or, if that Court does not have jurisdiction, the United States District Court for the District of Maryland, Northern Division, <u>shall be the sole and exclusive forum for</u> (a) any Internal Corporate Claim, as such term is defined in . . . the Maryland General Corporation Law (the "MGCL") . . . (b) any derivative action or proceeding brought on behalf of the Corporation, (c) any action asserting a claim of breach of any duty owed by any director or officer or other employee of the Corporation to the Corporation or to the stockholders of the Corporation, (d) <u>any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation arising pursuant to any provision of the</u>

---

[7] Although both Saba and defendants cite § 12-501(b), neither analyzes its language or points out its divergence from § 2-113, which governs corporations. As a result, neither party addresses whether "the exclusive jurisdiction of the courts of the State" refers only to state courts in Maryland or, like the forum selection bylaws at issue, it also includes federal courts located in Maryland. The Court thus does not reach that question.

> MGCL or these Bylaws or federal law, including the 1940 Act, or (e) any other action asserting a claim against the Corporation or any director or officer or other employee of the Corporation that is governed by the internal affairs doctrine. . . .

Motion, Ex. 1, Art. VIII; Ex. 2, Art. VIII; Ex. 3, Art. VIII; Ex. 4, Art. VIII (emphases added).

The four ClearBridge and Western Asset Funds' forum selection bylaws plainly cover Saba's claim, which arises "pursuant to . . . federal law." Id. Indeed, the bylaws specifically mention "the 1940 Act," which is the very statute under which Saba brings its claim. Id.; see Jones v. Harris Assocs. L.P., 559 U.S. 335, 339 (2010) (referring to the Investment Company Act of 1940 as "the 1940 Act").

Saba does not challenge that these four forum selection bylaws cover its claim. Instead, Saba argues that even if the bylaws are valid under Maryland law, they are not "presumptively enforceable" under the forum non conveniens doctrine. Opp. at 24–25. Saba hangs its hat on the Supreme Court's acknowledgment in Atlantic Marine that a forum selection clause may not control "in unusual cases," 571 U.S. at 64, and argues that a forum selection clause in a corporate bylaw presents an unusual case compared to such a clause in a mutually negotiated contract. See Opp. at 21–22.

It is true that, in stating that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases," the Supreme Court explained that "the

enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Atl. Marine, 571 U.S. at 63. But Saba itself alleges that the funds' bylaws "are binding contracts between the Funds and Saba." Complaint ¶ 44. Moreover, Maryland's highest court has held that "[a] corporation's bylaws are construed under the principles governing contract interpretation." Tackney v. U.S. Naval Acad. Alumni Ass'n, Inc., 971 A.2d 309, 318 (Md. 2009). And much like contracts, a corporation's bylaws reflect the "legitimate expectations" of the corporation and shareholders alike. Atl. Marine, 571 U.S. at 63; cf. Stolow v. Greg Manning Auctions Inc., 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003) ("The bylaws of a corporation constitute a contract between a corporation and its members."). The Court thus rejects the argument that the forum selection clauses here at issue represent the "unusual case[]" in which they are not presumptively enforceable merely because they are located in corporate bylaws. Atl. Marine, 571 U.S. at 64.

Moreover, Saba fails to make any "showing that enforcement would be unreasonable or unjust, or that" any of the ClearBridge and Western Asset Funds' clauses are "invalid for such reasons as fraud or overreaching." Martinez, 740 F.3d at 217. For instance, Saba does not -- and cannot -- argue that "the law to be applied in the selected forum is fundamentally unfair," id. at 228, because

the same federal law governs in any forum. Nor does Saba articulate any way in which "enforcement contravenes a strong public policy of the forum," or that "trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Id. Indeed, as Saba itself notes, a trial in any forum is unlikely in this case because the complaint concerns a pure issue of law. See Opp. at 15 ("Saba's case involves a pure legal question under federal law. No evidence, no witnesses, no premises, and no trial is involved."). As a result, the Court dismisses the claims against the four ClearBridge and Western Asset Funds.

2. BlackRock Innovation and Growth Term Trust's forum selection clause applies to Saba's claim.

BlackRock Innovation and Growth Term Trust ("BIGZ") has a forum selection bylaw that provides the following:

> Any suit, action or proceeding brought by or in the right of any Shareholder or any Person claiming any interest in any Shares seeking to enforce any provision of, or based on any matter arising out of, or in connection with, this Declaration or the Trust, any series or class or any Shares, including any claim of any nature against the Trust, any series or class, the Trustees or officers of the Trust, shall be brought exclusively in the Circuit Court for Baltimore City, Maryland, or, if that Court does not have jurisdiction, the United States District Court for the District of Maryland, Baltimore Division . . . .

Motion, Ex. 14, § 12.4 (emphasis added).

BIGZ's forum selection bylaw also encompasses Saba's claim. Indeed, it covers all claims "in connection with" the trust, and is not limited to claims "arising out of" Maryland's corporate code or the trust's governing documents. Id. For the avoidance of doubt, the bylaw plainly states that it covers "any claim of any nature against the Trust." Id.

Saba mobilizes the same arguments against enforcement of the BIGZ forum selection bylaw that it does against the ClearBridge and Western Asset Funds' bylaws. And for the same reasons, those arguments fail to persuade. Saba also argues, however, that BIGZ's forum selection clause "was not reasonably communicated" -- and thus should not be enforced -- because its language "appears impossibly broad." Opp. at 17. The Court sees no merit to that argument. Breadth and ambiguity are two different animals, and nothing about BIGZ's forum selection bylaw is unclear. Moreover, Maryland law expressly contemplates such a broad forum selection clause by a trust. Once again, it provides that "[i]n the governing instrument of a statutory trust or other writing, a trustee, beneficial owner, or other person may consent to be . . . [s]ubject to . . . [t]he exclusive jurisdiction of the courts of the State." Md. Code, Corps. & Ass'ns § 12-501(b)(1)(ii). The Court thus dismisses Saba's claim against BIGZ. And because BIGZ's forum selection bylaw also applies to claims against "the Trustees," Motion, Ex. 14, § 12.4, the Court also dismisses the claims

regarding BIGZ's forum selection bylaw against BIGZ's ten individual trustees who are named as defendants.[8]

### 3. FS Credit Opportunities Corp.'s forum selection clause does not apply to Saba's claim.

FS Credit Opportunities Corp. ("FSCO") has a forum selection bylaw that provides the following:

> Unless the Corporation consents in writing to the selection of a different forum, to the fullest extent permitted by law, the Circuit Court for Baltimore City, Maryland, or, if that court does not have jurisdiction, the United States District Court for the District of Maryland, Baltimore Division, shall be the sole and exclusive forum for . . . (c) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation arising pursuant to any provision of the MGCL, the charter of the Corporation or these Bylaws, or (d) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation that is governed by the internal affairs doctrine . . . Any person or entity purchasing or holding any interest in the Corporation's stock shall be deemed to have notice of and consented to this Article XIV.

Motion, Ex. 5, Art. XIV (emphasis added).

The clause does not cover Saba's claim. As explained above, a claim under the Investment Company Act "aris[es] pursuant to" a federal statute, not corporate bylaws. Id. Nor is such a claim

---

[8] Those are: R. Glenn Hubbard, W. Carl Kester, Cynthia L. Egan, Frank J. Fabozzi, Lorenzo A. Flores, Stayce D. Harris, J. Phillip Holloman, Catherine A. Lynch, Robert Fairbairn, and John M. Perlowski. Those ten individuals are also named as defendants in their capacity as trustees of another fund, BlackRock ESG Capital Allocation Trust. Dismissal of the claims against them regarding BIGZ's resolution does not affect claims against them regarding BlackRock ESG Capital Allocation Trust, which Saba also alleges to have violated the Investment Company Act.

"governed by the internal affairs doctrine." Motion, Ex. 5, Art.
XIV. "The internal affairs doctrine is a conflict of laws principle
which recognizes that only one State should have the authority to
regulate a corporation's internal affairs -- matters peculiar to
the relationships among or between the corporation and its current
officers, directors, and shareholders -- because otherwise a
corporation could be faced with conflicting demands." NAACP v.
Golding, 679 A.2d 554, 559 (Md. 1996) (quoting Edgar v. MITE Corp.,
457 U.S. 624, 645 (1982)). That choice-of-law rule has no
application here, where the underlying law comes from a federal
statute.

   4. The forum selection bylaws of the five Tortoise Funds, and
      the nearly identical forum selection bylaw of Royce Global
      Value Trust, Inc., do not apply to Saba's claim.

   The five Tortoise Fund defendants -- Tortoise Midstream
Energy Fund, Inc ("NTG"); Tortoise Energy Independent Fund, Inc.
("NDP"); Tortoise Pipeline & Energy Fund, Inc. ("TTP"); Tortoise
Energy Infrastructure Corp. ("TYG"); and Ecofin Sustainable and
Social Impact Term Fund ("TEAF") -- have forum selection bylaws
that provide the following:

> Unless the Corporation consents in writing to the selection
> of an alternative forum, the Circuit Court for Baltimore City,
> Maryland, or if that Court does not have jurisdiction, the
> United States District Court for the District of Maryland,
> Northern Division, shall be the sole and exclusive forum for
> (a) any Internal Corporate Claim, as such term is defined in
> the MGCL, (b) any derivative action or proceeding brought on
> behalf of the Corporation, other than actions arising under

federal securities laws, (c) any action asserting a claim of breach of any duty owed by any director or officer or other employee of the Corporation to the Corporation or to the stockholders of the Corporation, <u>(d) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation arising pursuant to any provision of the MGCL or the charter or Bylaws of the Corporation</u>, or <u>(e) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation that is governed by the internal affairs doctrine</u>. None of the foregoing actions, claims or proceedings may be brought in any court sitting outside the State of Maryland unless the Corporation consents in writing to such court.

Motion, Ex. 7, Art. XV; Ex. 8, Art. XV; Ex. 9, Art. XV; Ex. 10, Art. XIV; Ex. 11, Art. XIV (emphases added).[9] Royce Global Value Trust, Inc. ("RGT") has a forum selection bylaw that is, in relevant part, the same as that of the Tortoise Funds. Motion, Ex. 6, Art. XIII.

The only relevant difference between the Tortoise Funds/RGT forum selection bylaws and FSCO's bylaw is that the former also apply to "any Internal Corporate Claim." Once more, however, a claim under the Investment Company Act is not an "internal corporate claim" under Maryland law. <u>See</u> Md. Code, Corps & Ass'ns § 1-101(q) (defining such a claim). As a result, much like the clause in FSCO's bylaw, the Tortoise Funds/RGT forum selection clause does not cover Saba's claim.

---

[9] For one of the Tortoise Funds, TEAF, the forum selection clause replaces "Corporation" with "Trust" because TEAF is a statutory trust. <u>See</u> Motion, Ex. 11, Art. XIV.

5. <u>The two Adams Funds' forum selection bylaws do not apply to Saba's claim.</u>

The two Adams Fund defendants -- Adams Diversified Equity Fund, Inc. ("ADX") and Adams Natural Resources Fund, Inc. ("PEO") -- have forum selection bylaws that provide the following:

> Unless the Fund consents in writing to the selection of an alternative forum, <u>the Circuit Court for Baltimore City, Maryland</u>, or, if that Court does not have jurisdiction, the United States District Court for the District of Maryland, Baltimore Division, <u>shall be the sole and exclusive forum for</u> (a) any derivative action or proceeding brought on behalf of the Fund, (b) any action asserting a claim of breach of any duty owed by any director or officer or other employee of the Fund to the Fund or to the stockholders of the Fund, (c) <u>any action asserting a claim against the Fund or any director or officer or other employee of the Fund arising pursuant to any provision of the MGCL or the charter of the Fund or these Bylaws</u>, or (d) <u>any action asserting a claim against the Fund or any director or officer or other employee of the Fund that is governed by the internal affairs doctrine</u>.

Motion, Ex. 12, § 7.5; Ex. 13, § 7.5 (emphases added).

For now-familiar reasons, the Adams Funds' forum selection bylaws do not apply to Saba's claim. Saba's claim arises under a federal statute, not Maryland's corporate code or the charters or bylaws of any of the funds. Nor is the action "governed by the internal affairs doctrine." <u>Id.</u>; <u>see Golding</u>, 679 A.2d at 559.

6. <u>As defendants concede, the remaining two funds lack applicable forum selection bylaws.</u>

The remaining two funds -- BlackRock ESG Capital Allocation Term Trust ("ECAT") and BlackRock Municipal Income Fund, Inc. ("MUI") -- lack applicable forum selection clauses. As defendants

themselves concede, "MUI's governing documents are silent with respect to forum . . . and ECAT's Declaration of Trust contains a forum selection provision that categorically excludes claims 'arising out of or in connection with the federal securities laws.'" Motion at 23-24.

Defendants argue only that "if nearly all of the Funds -- including BIGZ, another BlackRock Fund -- are dismissed on the basis of the Forum Selection Provisions, then the dismissal of MUI and ECAT will promote judicial economy by allowing this matter to be litigated efficiently in a single forum and avoiding the risk of inconsistent rulings." Opp. at 25. Defendants' premise does not hold, however; only 5 of the 16 funds have forum selection bylaws that apply to Saba's claim.

Considering the traditional <u>forum non conveniens</u> analysis, which requires granting some weight to Saba's choice of forum, <u>see</u> <u>Atl. Marine</u>, 571 U.S. at 62 n.6, defendants provide little reason to dismiss claims against any of the funds without applicable forum selection clauses. Defendants assert that "New York has relatively little interest in this dispute, while Maryland has a strong interest in deciding an issue of Maryland law involving Maryland funds." Motion at 25. But, in the Court's view, Saba has the better telling: "Saba brings a federal securities case raising a pure question of federal law, in the federal court in the District where

Saba was harmed, against Funds that actively conduct business in New York." Opp. at 2.

Other than defendants' own preference, defendants have not demonstrated that the public and private interest factors make a Maryland court a more convenient forum. The Court thus denies defendants' motion to dismiss the claims against ECAT and MUI, and any of the other funds that lack applicable forum selection bylaws. For the same reason, Saba's claim also still stands against the 11 individual trustee defendants, each of whom is a trustee of at least one fund that lacks an applicable forum selection bylaw.

III. Conclusion

The Court grants the motion to dismiss Saba's claims against the following defendants: EMO, CTR, CEM, SBI, and BIGZ. The claims regarding BIGZ against individual trustee defendants R. Glenn Hubbard, W. Carl Kester, Cynthia L. Egan, Frank J. Fabozzi, Lorenzo A. Flores, Stayce D. Harris, J. Phillip Holloman, Catherine A. Lynch, Robert Fairbairn, and John M. Perlowski are dismissed, but the claims regarding ECAT remain against those defendants. The Court denies the motion to dismiss claims against all other defendants. The Clerk is respectfully directed to close document number 57 on the docket of this case. The parties are directed to jointly call chambers by no later than September 29, 2023 to schedule an initial pretrial conference.

SO ORDERED.

New York, NY
September 26, 2023

_____
JED S. RAKOFF, U.S.D.J