UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SABA CAPITAL MASTER FUND, LTD., and SABA CAPITAL MANAGEMENT, L.P.,

    Plaintiffs,

-v-

BLACKROCK MUNICIPAL INCOME FUND, INC., et al.,

---

23-cv-5568 (JSR)

ORDER

JED S. RAKOFF, U.S.D.J.:

On December 5, 2023, the Court issued a "bottom-line" order granting summary judgment for plaintiffs Saba Capital Master Fund, Ltd. and Saba Capital Management, L.P. (collectively, "Saba"). ECF No. 118.[1] The Court then, on January 4, 2024, issued an Opinion and Order reconfirming and explaining the reasons for the bottom-line order. ECF No. 124 ("Summary Judgment Op."). The Court held that certain resolutions adopted by defendants, who are closed-end mutual funds and some of their individual trustees, violated Section 18(i) of the Investment Company Act ("ICA"). Id. at 17-18. The Court thus ordered the offending resolutions to be rescinded. Id. at 18-20. The Clerk of Court entered final judgment the same day. ECF No. 125. On January 3, 2024, two of the defendants -- BlackRock ESG Capital Allocation Trust ("ECAT") and BlackRock

---

[1] The Court assumes familiarity with its prior rulings and the record in this case. See, e.g., ECF Nos. 79, 124.

1

Municipal Income Fund, Inc. ("MUI") (collectively, the "BlackRock Funds") -- moved for a stay of the judgment pending appeal. ECF No. 123. Saba filed opposition papers on January 12, 2024, ECF No. 128, and the BlackRock Funds filed a reply on January 17, 2024, ECF No. 132. After considering the parties' submissions, the Court hereby denies the BlackRock Funds' motion.

"A stay is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 556 U.S. 418, 433 (2009).[2] "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Id. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433-34. In determining whether to exercise such discretion, the Court considers "four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id. at 434. "The first two factors . . . are the most critical." Id. "It is not enough that the chance of success on the merits be better than negligible." Id. "[M]ore than mere possibility of relief is

---

[2] Here and elsewhere, internal alterations, citations, and quotation marks are omitted unless otherwise indicated.

required." Id. "By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor." Id. at 434-35. It is only "[o]nce an applicant satisfies the first two factors" that "the . . . stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." Id. at 435.

The BlackRock Funds' motion fails because they have not established either of the two "most critical" factors. Id. at 434. The BlackRock Funds' have not shown -- let along strongly shown -- a likelihood of success on the merits of their appeal. Indeed, the Court's ruling on the merits was almost entirely controlled by the Second Circuit's decision in Saba Capital CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund, 88 F.4th 103 (2023). In Nuveen, the Second Circuit held that resolutions akin to those here at issue violated the ICA for two independent reasons. Id. at 117. First, the resolutions violated the ICA's requirement "that every share of common stock issued by a regulated fund be 'voting stock.'" Id. (quoting 15 U.S.C. § 80a-18(i)). Second, the resolutions also violated Section 18(i) of the ICA because they "deprive[d] some shares of voting power but not others -- contrary to the provision's guarantee of 'equal voting rights.'" Id. (quoting 15 U.S.C. § 80a-18(i)). In so holding, the Second Circuit confronted and rejected nearly all of the very arguments defendants made in opposing Saba's motion for summary judgment in this case.

3

The BlackRock Funds identify two arguments they made before this Court that Nuveen did not resolve. First, the BlackRock Funds argued that "because the control share resolutions at issue are permissible under Maryland law, they are 'otherwise required by law' and thus safe from Section 18(i)'s mandate of equal voting rights" under an express statutory carve-out. Summary Judgment Op. at 18. The BlackRock Funds contend that because the application of that statutory carve-out is an issue of first impression in this Circuit, they have made a sufficient showing on the first factor of the stay analysis. The Court rejects that notion. The Court easily and roundly rejected the BlackRock Funds' "otherwise required by law" argument based on the plain text of the ICA. Cf. Nuveen, 88 F.4th at 117 (resting its interpretation of the ICA on the statutory "language," which "is plain and unambiguous"). "The fact that Maryland law allows funds to adopt" the resolutions at issue "does not in any way mean that Maryland law requires as much." Summary Judgment Op. at 18. Accordingly, the BlackRock Funds' argument provides no path to success on the merits.

Nor do the BlackRock Funds fare any better with their argument that the Court erred by granting summary judgment for Saba before discovery. The BlackRock Funds refer to "Nuveen's abbreviated discussion of this issue [as] dicta." ECF No. 123 ("Mot."), at 5. Although the defendant in Nuveen argued before the Second Circuit that it was improper for the district court to have granted summary

4

judgment for the plaintiff (a different Saba fund) before discovery, the Second Circuit held that "Nuveen forfeited this argument by failing to raise it before the district court." 88 F.4th at 120 n.16. But, notwithstanding the forfeiture, the Second Circuit then went on to address the merits of -- and reject -- the argument. Id. ("In any event, Nuveen misreads 15 U.S.C. § 80a-46(b)(2)."). Under the ICA, the Second Circuit explained, "a court may not deny rescission at the instance of any party unless such court finds that under the circumstances the denial of rescission would produce a more equitable result than its grant and would not be inconsistent with the purposes of [the ICA]." Id. (quoting 15 U.S.C. § 80a-46(b)(2)). On the other hand, "[e]quitable balancing is not required to grant rescission." Id. Even assuming arguendo that this analysis was dicta, rather than (as it is more naturally understood) an alternative holding with equally binding effect, it was likewise rooted in the ICA's "plain and unambiguous" text. Id. at 117. The BlackRock Funds thus cannot rely on this second argument to meet the first stay factor, either.

The BlackRock Funds have also not shown that they will be "irreparably injured absent a stay." Nken, 556 U.S. at 434. They argue "that a scenario where directors or trustees are improperly elected constitutes irreparable harm." Mot. at 1. But even if true, that contention presumes defendants' success on the merits, a presumption the Court has already explained is unfounded. Under

5

the ICA, Saba has a right for its shares to be voting stock with equal voting rights to other shares. Nuveen, 88 F.4th at 117; Summary Judgment Op. at 17-18. In Nuveen, the Second Circuit refused to "deviate from the statute's plain meaning" to infer some congressional "intent to prevent activist investors like Saba from acquiring concentrated ownership interests in investment funds." 88 F.4th at 120. In other words, the fact that, as a result of the Court's ruling, Saba can advance its agenda by voting its shares is the very result the ICA was designed to promote, not a harm or injury against which the Court must guard. See id. (concluding that even if "Congress's policy considerations" were "determinative, they would lean in Saba's favor").

Because the BlackRock Funds have not established either of the two "most critical" factors of the test for a stay pending appeal, the Court need go no further. Nken, 556 U.S. at 434; see id. at 435 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."). But even if the Court were to consider the remaining two factors, they again favor Saba. Issuing a stay would "substantially injure" Saba, id., "by stripping [its] shares of voting rights unequally," Nuveen, 88 F.4th at 120-21. Finally, "the public interest lies" in enforcing the ICA, Nken, 556 U.S. at 434, which Congress enacted with the public interest in mind. "Congress passed the ICA to provide a

6

comprehensive regulatory scheme to correct and prevent certain abusive practices in the management of investment companies for the protection of persons who put up money to be invested by such companies on their behalf, i.e., the shareholders." Nuveen, 88 F.4th at 120. "These corrections were enacted for the benefit of investors, not fund insiders" who prefer to maintain management as the status quo. Id. The Court thus denies the BlackRock Funds' motion to stay the judgment pending appeal.

    SO ORDERED.

New York, NY
January 21, 2024

                                    JED S. RAKOFF, U.S.D.J